Good morning. May it please the Court. My name is George Gormley for the Appellant. This is a sentencing appeal and so I will begin with a very brief recount of the facts. Coast Guard surveillance on April 12, 2012 acquired a small vessel apparently heading towards Puerto Rico. As the craft drew closer and entered U.S. waters, the Coast Guard intercepted and deported the vessel. It was found to contain a crew of six, a significant amount of narcotics and quite a bit of fuel. The crew was arrested, transported to Puerto Rico where some were debriefed. My client gave an extensive debriefing to the authorities right the day after he was seized. All six individuals were promptly indicted and in my client's case were conspiracy to import and possession, conspiracy to possess with intent to distribute the subsequently sentenced to 188 months in prison. This was later reduced to 151 months by Amendment 782. I just mention that. I don't think it has anything to do with this disparity analysis. First, I would like to call the Court's attention to a procedural misstep which occurred at his hearing and unfairly prejudiced him. That is, my client was first characterized as a leader of this venture at his sentencing hearing. Neither he nor his counsel were given notice of this in advance by the government. Mr. Gormley, when the pre-sentence report was issued, there is, I believe, a statement in the pre-sentence report which says something to the effect that all of the men on the boat were equally responsible, that the government made that claim, that they were all equally responsible. Didn't that give your client some pre-notice that this might come up during the sentencing hearing? I don't believe so, Judge, because I take that. The district judge raised this, and it was based on the DEA agent's trial testimony, and I take his trial testimony to be that everybody on board was a guilty participant as opposed to being a tourist who was just hitching a ride, as was the defense that was asserted by those who went to trial. So I don't think that, I don't, I think it's apples and oranges, if the court will, that what was said goes to guilt or innocence, not role in the offense. Can I understand the nature of the procedural violation? So the statement of leader is coming from the prosecutor? That's correct. There's no statement by the district court directly saying that it understood him to be a leader? Well, as I understand that there might be, implicitly you could say it, but in terms of just the record, the district court never uses that word. The district court, it does not. I believe it says that everybody referring to the DEA agent's trial testimony says, ah yes, they were all equally involved. So the procedural violation is what? That my client or his counsel had no advance notice that either the government or the court was going to use. Well, suppose it was just the government that used it. Even crediting that there was no advance notice and that there is some procedural right to advance notice of the government raising that issue, unless the district court itself relied on a finding of leadership, there would be no prejudice to your client, would there? Well, yes, there would, because he was advocating, he was advocating for a minor role that at that time, and that show the- But I don't understand, how is there a- assume the prosecutor, as he did, mentioned him being a leader, okay? For you to win, the district court had to rely on that statement in some fashion, I assume, unless you're telling me that you can win even if the district court did not rely on that statement. I think I've got a substantive case, a substantive disparity case, Judge Nanna, and I think my client- the district court's characterization put my client at 188 months, and I think when you then compare him to the other defendants, which go from a high of 240 months to a low of 48 months, my client was unduly- But that's a substantive disparity. Yes, it is, sir. Right, no, I'm just trying to understand the procedural objection, if there is one. Are you saying that we should infer from the length of the sentence that the district court judge did rely on the prosecutor's assertion of leadership? Yes, it did, and the assertion of leadership or equality came out of the blue at the sentencing hearing with no- Right, but let's assume, just assume for purposes of argument, the prosecutor said that and had no basis for saying it. We're trying to understand what's your case for saying that the district court judge erred by relying on it, and so far I've heard you say we could infer from the sentence. Is there anything else in this record that would allow us to find not only that the prosecutor said it, but that you've established error by the district court in relying on it? That I believe that is my case from the record in on the procedural point, Judge. Before you go away from this issue, your next issue of the sentencing disparity itself, if I recall correctly, the amount of drugs on the vote drove the guideline range. Am I not correct on that? Yes, you did, sure. So if the court sentenced within that guideline range, albeit at the bottom, isn't there not an argument that the court simply looked and said, well, with this particular person, regardless of whether he was an organizer or a leader, the weight drove his sentence. The sentence is within the guidelines of what you're arguing then. The weight was a constant for all six individuals. In other words, the vote contained 37,000 kilos of marijuana equivalent. All six gentlemen's offense levels started out with that. From there, there were adjustments made for individual culpability. When you take those into account, you are left with the fact that my client, with his 188-month sentence, was unfairly and desperately sentenced in comparison to the rest. Wasn't there one of the co-conspirators who was sentenced to a higher range? Oh, yes. Number one, Mr. Luriano de la Cruz, he received a 240-month sentence, but he was also of coming to the United States after he had been deported. And apparently, as I looked in the record, he had a previous immigration conviction for that, and apparently an underlying, I believe, a state court felony offense. So his criminal history was markedly different. Yes, he is, sir. Yes, he is. Can I just follow on Judge Stahl's, the last comment we had with him, just so I understand it? The range that the district court actually used, the sentencing range, could have been determined or could have been set without regard to leadership at all. Is that what you were saying? In other words, the quantity alone could have supplied the range? Yes. My client was sentenced within the permitted range for that quantity of narcotics. Without a finding, you didn't need a finding of leadership to set that range? That's right, sir. That's correct. And what is your, the district court judge actually did, when he sentenced your client, he said he referred to the client's age, his family status, his employment, his medical history, his lack of priors, his illegal entry. If your premise is correct, that the district court judge was affected and relied upon by the representation by the prosecutor, why would the district court not have included that, that one thing that was discussed in his sentencing explanation? Well, I don't know why the, I only know what the district court's rationale was, as Yorana has, as Yorana has put it forth. I don't know why it was not included. He, the district judge, is the one who raised the DEA agent's prior testimony. It wasn't, it wasn't the, the government indicate, the government indicated the sentencing range that, and said that everybody was equally culpable and that it was then the district judge who referred to this. I would indicate also that prior to this, the government had given my, had offered my client a range of 108 to, to 135 months, which is, which is a range at level 31, which is a minor role adjustment. Yes, we're aware of that. Thank you, Mr. Gorman. Thank you, sir. Good morning, Your Honors. May it please the court. Francisco Vesas Martinez for the government. I'd like to start with the issue of the government having argued that he was an organizer or leader. The government did, in fact, argue during the sentencing that Mr. Almonte was an organizer based on information it had received from a co-defendant, but as the record clearly states, there is nothing in the record to suggest or to, or to, to suggest that the district court in any way saw that as a... That comment was a principal part of the government's argument, as I read the record, that your, that his client was an organizer. That's a specific role that, and can you cite to, I gather you admit that in this record, there's absolutely no evidence of that. On the, on the, on the available record, the only other area where this is touched upon is on a, actually a co-defendant sentencing memorandum where Mr. Almonte is identified also as one of the organizers of the, of the, of the drug venture in this case, so... It is not in this record. Yes, that's correct, your honor. And it was not before the court. It was not, sorry? The only thing that was before the court was the, was the raw statement that he was an organizer. Yes, your honor, and... Without reconsideration. That's correct, your honor. How, how does, how does this happen? I mean, how does the, is it Ms. Tiffany, the prosecutor here? How, how does this happen that someone in your office goes into court and makes such a, makes a significant representation like that with nothing in the record, nothing in the PSR, and then argues it to enhance someone's sentence? Well, your honor, there was no explicit... Well, she did argue that he was an organizer. She never moved for a upward adjustment for leadership. No, but she suggested he should get several extra years in jail. She, she was arguing for, still within the guideline range, your honor. She was arguing for the upper end of the guideline. But you would agree when we're within the guideline, the court, or, or is your position otherwise? That would be, that's correct, your honor. The, the record here on this point is not that well developed. The government recognizes that. However, there's nothing in the record to suggest that the government's arguments prejudice Mr. Almonte in, in so far as there's nothing in the record to suggest that the court relied in any way on those representations. As this court had stated, the sentencing guideline was driven by the drug weight, in this case, over 146 kilograms of cocaine, over 8 kilograms of heroin, which totaled more than $3 million of street violent heroin. Yeah, but there was sort of a relevant sense that as to this defendant, there was no evidence of his role in the offense, either in the PSR. The PSR is silent on the role in the offense, other than the government, other than the statement the government asserts that they were all equally involved. Then at sentencing, various sentences were issued, depending, to some extent, I agree on criminal history, but people got higher sentences and much lower sentences, including one defendant who was a leader, who was clearly a leader and organizer, who got 120 months. That's correct, Your Honor. This, pivoting over to the disparate sentence issue, there was a wide range of sentences here, ranging from a lower end of 48, 120, 132. The reason I ask that question is that gets back to my original argument, that it was the statement that he was an organizer which drove his sentence. And again, as you would candidly admit, there's absolutely no evidence of that in the record. That's correct, Your Honor, but there's also nothing in the record to suggest that he relied on that. With regards to defendant number two, the leader who got 120 months, that was a very particular case where he had multiple health detention centers because he couldn't be transported over to the courthouse. That was the reason for his sentence at 120 months. What was the defendant's argument for setting a lower range? Did it have to do with role or not? With Mr. Almonte? No, Your Honor. He did not argument that he was not a mule. If the defendant didn't ask for a minor role, it doesn't have the basis for the lower sentencing range. Your understanding is that the district judge set the sentencing range based on quantity. The government then, without any record support, says that within that range, it should be at the higher end because of his leadership. But there's no prejudice on your view to defendant because, in fact, the district judge set it at the lowest possible aspect of the range. That's correct, Your Honor. So it would be a different case if the defendant had moved for a lower range based on minor role and the only basis for rejecting the minor role adjustment would appear to be some on-record supported conclusion about leadership. But that's not this case. This case is one in which the only thing that was sought was a lower sentencing range for reasons unrelated to the defendant that the district court rejected. Then we just have a sentencing range based on quantity. Then the only issue is, did the statement about leadership affect where within that range the sentence fell? Since it fell at the bottom end, no prejudice to defendant. That's the government's argument? That's precisely it, Your Honor. What about the request for a variance? Can't we read defense counsel as asking for a variance from the range based on the fact that other judges had sentenced other similar defendants to a range of variances that topped out at the bottom of the range, the 188, and then went down from there? Can't we view the judges having rejected that entire 188 and below variance range and instead picked to stay within the in this case? Those that received the lower end, they each had very particular circumstances that the judge felt warranted those lower end sentences. For example, I'd like to ask specifically about one of them. Yes. Vincente Arias. Yes. 130 months. How did he differ? I assume he was a criminal history one just as Mr. Gormley's client was criminal history one. How did he vary? Yes, they were both criminal history, Your Honor. Mr. Vicente Arias went to trial. And from the record, it seems that there was evidence of the trial to suggest that he did have a minor role. And he was given a minor role adjustment, which is why his guideline sentencing range was lower than Mr. Almonte's. In contrast, Mr. Hill Martinez, another defendant, went to trial. He and Mr. Almonte had the same base offense level, the same criminal history category, with the only difference that Mr. Almonte got a two-point reduction for acceptance or responsibility. And at his sentencing hearing, the district court specifically stated that in response to the defendant's argument for a statutory minimum sentence that I have sentenced another defendant that entered a straight plea to 180 months. If I sentence your defendant to 120 months, that causes sentencing disparity in this case. So this is a case where the district court had multiple defendants, each of which had very particular circumstances that it had to take into consideration while fashioning their sentence and ensuring that no unwarranted disparities. Well, then I get back to my original question to you, which I don't think you would have satisfactorily at least answered for me, which is how do you justify a decision made by prosecuting counsel that this man was a leader? How do you justify it? Because there's a big difference as you look at these. There are two separate issues we know, individual sentencing disparity and whether just a mistake was made in this man's sentence, a serious mistake. Because obviously the prosecutor had thought that a minor role was okay when he offered him 120 or 121 months, whatever the rejected plea offer was. So the reasons for the plea offer, I am not aware of the specifics as to that, your honor. However, as stated in this particular case at the sentencing hearing, the drug weight drove the guideline. The guideline was 188 to 235. The government presented its arguments for its sentence. The defense presented their arguments, and the district court imposed the sentence at the bottom end of the applicable guideline range without any suggestion that the court believed that Mr. Almonte was a leader or organizer. Thank you, your honor.